IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHEILA JEAN HEIER                                                             PLAINTIFF

v.                    NO. 4:22-cv-00983-DPM-PSH

KILOLO KIJAKAZI, Acting Commissioner of            DEFENDANT
the Social Security Administration

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

In this case, plaintiff Sheila Jean Heier ("Heier") challenges the denial of her application for disability insurance benefits on the ground that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] It is Heier's contention that the ALJ failed to properly evaluate the medical opinions of Katie Holmes ("Holmes"), DPT. Because the ALJ's evaluation of Holmes' opinions is flawed, it is recommended that this case be remanded so that the ALJ can re-evaluate them.

Heier was born on January 29, 1965, and was fifty-five years old when she filed her application for disability insurance benefits. In the application, she alleged that she became disabled beginning on February 28, 2020, as a result of impairments in the form of, inter alia, scoliosis, cervical degenerative disc disease, carpal tunnel syndrome, arthritis, and bursitis of the left shoulder.

---

[1] The question is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." See Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)).

Heier summarized the medical and opinion evidence in the record, and the Acting Commissioner of the Social Security Administrative ("Commissioner") did not dispute the summary. For purposes of this Report and Recommendation only, the summary is adopted. It is as follows:

> On February 12, 2020, two weeks before Plaintiff's alleged onset date, Plaintiff's primary care provider—Jim Citty, M.D.—wrote, "[Plaintiff] has reached the point because of her medical condition that her work effectiveness is greatly impaired due to pain, limitation of motion, and generalized muscular weakness. She is currently being treated for degenerative disc disease, cervicalgia, and she has a past history of [a] Harrington rod procedure for thoracic scoliosis. It is recommended that her workload be diminished at this time, pending possible retirement for medical reasons." Tr. 489. Plaintiff has continued to treat with Dr. Citty throughout the relevant period. Tr. 507-13, 519-522, 526-544, 554-556. In March 2021, Dr. Citty noted on examination that Plaintiff had multiple joints that were "inflamed and painful," and that Plaintiff had abnormal upper left shoulder arthralgia. Tr. 542.
>
> On February 26, 2020, Plaintiff told Syed F. Ali, M.D. that she had neck pain as well as tingling and numbness in her upper extremities. Tr. 393, 395, 402. A nerve conduction study showed peripheral neuropathy in her upper extremities. Tr. 393, 395, 402. She reported getting headaches and neck pain. Tr. 416.
>
> Plaintiff again saw Dr. Ali on May 19, 2020. Tr. 452. Plaintiff reported that her tingling and burning had gotten worse, that she is hurting more in her fingers, as well as in her feet. Tr. 452. Plaintiff reported that she has neck pain that is worse when she turns her neck, and that she is "hurting all the time." Tr. 452.

On June 4, 2020, Plaintiff saw Gregory Smith, M.D. of the Spine & Neurosciences Institute for cervical neck pain as well as pain in her bilateral hands. Tr. 448-449. Dr. Smith wrote that Plaintiff is "known to have DDD on MRI found in December 2019." Tr. 449, 451. Dr. Smith also wrote that Plaintiff "has failed conventional therapy with PT [physical therapy] and medications." Tr. 451. Dr. Smith advised Plaintiff to consider cervical epidural steroid injections. Tr. 451.

On June 17, 2020, Plaintiff saw Sukanthi Kowuru, M.D. of the Spine & Neurosciences Institute for complaints of neck pain and paresthesia in both hands. Tr. 443-444, 474-475. Plaintiff reported that her major symptom is neck pain with accompanying headache. Tr. 444, 474-475. Plaintiff also reported numbness in her fingers and occasional pain that shoots down from the arms into her hands. Tr. 444, 474-475. Plaintiff reported heaviness and soreness in her arms with activity, including "even holding her phone" to her ear. Tr. 444. Dr. Kowuru suggested that Plaintiff may have thoracic outlet syndrome. Tr. 445, 474-475. Plaintiff is prescribed Gabapentin ("Neurontin") for her nerve pain, Mobic for her neck pain, and daily Fioricet for her headaches. Tr. 444-445, 474-475. Plaintiff reports difficulty writing because of the numbness in her hands. Tr. 446.

On June 30, 2020, Plaintiff underwent a cervical thoracic epidural steroid injection ... Tr. 454, 471-472.

On July 7, 2020, Plaintiff saw Dr. Ali. Plaintiff reported that she was still having pain in the back of her head and neck aches, but that the Gabapentin was helping but making her too sleepy. Tr. 467. Plaintiff requested an alternative medication to Gabapentin. Tr. 467-468.

On August 20, 2020, Plaintiff saw registered nurse ("APRN") Kellie J. Darnell. Tr. 514. On examination, Plaintiff's left shoulder was tender to palpation. Tr. 517. Range of motion in Plaintiff's left shoulder was abnormal. Active motion was decreased and pain was elicited with motion. Tr. 517.

> On October 5, 2020, Plaintiff saw Thomas E. Day, M.D. for left shoulder pain. Tr. 491. Plaintiff reported that the pain increased when she lifted her left arm above shoulder level, and by lifting weight. Tr. 491. Plaintiff also reported continued pain in her neck and back. Tr. 491. Plaintiff also noted that her neck pain is associated with headaches. Tr. 491. Dr. Day diagnosed Plaintiff with left shoulder impingement syndrome and cervicalgia. Tr. 493.

See Docket Entry 10 at CM/ECF 3-5.

In January of 2021, Holmes performed a functional capacity evaluation of Heier. See Transcript at 494-504. Holmes recorded Heier's medical history, and the history includes, in part, the following:

> Shelia Heier is a 56 ... year old female, diagnosed with neck and LBP as a result of DDD. Significant medical history includes neuropathy of (L) LE. Patient reports neck and LBP has been ongoing for several years. She states that onset of neck pain began approximately 2 years ago and back pain approximately 7-8 years. ... Patient worked in the cafeteria at Pangburn Public Schools for 22 years. She states that her job required heavy lifting and serving food. She states that she was unable to continue working and retired in February of 2020. ... She occasionally uses cervical collar for neck support secondary to pain. Patient sees neurologist at UAMS. ... She is also currently being treated by pain management at UAMS. ... Treatment has consisted of medication, physician care, and physical therapy. These treatments have resulted in minimal perceived benefits. Current complaints include neck pain, headaches, and an "ache" in her (R) LE. The patient feels better in the morning, with a massage, taking medication, and using a cervical collar. The patient feels worse bending ... with activity, lifting, rising, sitting, and standing.

See Transcript at 495. Heier was tested for, inter alia, Waddell's signs, and two of the five signs were positive.[2] Holmes then offered the following assessment of Heier's functional abilities:

> Ms. Heier demonstrated the ability to perform material handling at the following levels during this functional capacity evaluation. Ms. Heier demonstrated an occasional bimanual lift of 13 lbs. and carry of up to 10.5 lbs. She also demonstrated the ability to perform lifting of up to 6.5 lbs. on a frequent basis and 2.6 lbs. on a constant basis. Ms. Heier demonstrates the ability to lift 10.5 lbs. at shoulder level and 8 lbs. overhead on an occasional basis. ...

See Transcript at 494. Holmes opined that overall, "Heier demonstrated the ability to perform work in the light classification of work as defined by the U.S. Department of Labor's standard for Physical Demand Classification." See Transcript at 494 (emphasis omitted). Holmes observed, though, that "lifts over five times per day at this level would place [Heier] at significant medical risk," see Transcript at 504, and a safe, recommended "physical demand classification" is 10.4 pounds occasionally, 6.5 pounds frequently, and 2.6 pounds constantly.

---

[2] Waddell's signs, or "symptom magnification testing," is used to "detect excessive reaction to responses not directly related to the diagnosis." See Transcript at 500. If findings are positive in "three of the first four and/or more than half of the categories tested, symptom magnification is present and further psychological testing is indicated to determine where the patient is out for secondary gain or simply has a poor perception of pain as it relates to function." See Transcript at 500.

Following Holmes' evaluation, Heier continued to seek medical attention for her joint pain. See Transcript at 547-550, 554-556, 557-559. For instance, at an April 1, 2021, presentation, Heier reported, in part, that she is "unable to lift things anymore ..." See Transcript at 548.

Heier completed a series of reports in connection with her application for disability insurance benefits. In a hand-written note accompanying a function report, she represented that she is only able to lift three to five pounds without hurting.

Heier testified during the administrative hearing. See Transcript at 156-171. While employed as a cafeteria worker, she was required to lift and carry up to fifty pounds. While employed as a postal worker, she was required to lift and carry up to thirty-five to forty pounds. She can lift and carry around five pounds regularly, and the heaviest weight she can carry is a "small load of clothes." See Transcript at 169.

The ALJ assessed Heier's residual functional capacity and found that Heier can perform light work, except she can frequently reach overhead with her left upper extremity and should avoid concentrated exposure to extreme cold and excessive vibration. In making the assessment, the ALJ weighed Holmes' medical opinions and found the following: "I find the opinion of Ms. Holmes somewhat persuasive that the claimant can perform

work at the light exertional level. However, her opinion regarding safely lifting less weight is not fully supported by the overall evidence of record." See Transcript at 142. The ALJ found at step four that Heier is capable of performing her past relevant work as a "Manager-Food Service and Post Office Clerk," see Transcript at 143, and is therefore not disabled within the meaning of the Social Security Act.

Heier maintains that the ALJ failed to properly evaluate Holmes' medical opinions. Heier so maintains because the ALJ did not address the supportability or consistency of the opinions. It is Heier's contention that the proper evaluation of the opinions matters because they are "most closely aligned with sedentary work" as sedentary work is defined by the Social Security Regulations. See Docket Entry 10 at CM/ECF 11. Had she been limited to sedentary work, she would be unable to perform her past relevant work.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, including the medical opinions. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007).

20 C.F.R. 404.1520c(a) provides that the ALJ will not defer or give any specific weight to any medical opinion or prior administrative medical findings. See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519 (E.D. Ark. June 24, 2020). The ALJ will instead determine the persuasiveness of a medical opinion or prior administrative medical findings based on the following:

> [...] supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

See Id. at 2.

The reasons the ALJ gave for treating Holmes' medical opinions as the ALJ did, i.e., Holmes' opinion that Heier can perform light work is "somewhat persuasive," but Holmes' opinion regarding Heier's ability to lift safely is "not fully supported by the overall evidence of record," see Transcript at 142, are good reasons. Although the ALJ need not provide great specificity to support the reasons, she must, though, offer something

9

to support them. See Walker v. Commissioner, Social Security Administration, 911 F.3d 550 (2018) (ALJ must explain with some specificity why opinion rejected). Here, the ALJ offered nothing. The reasons are simply boilerplate or blanket statements, which "will not do." See Lucas v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (ALJ's explanation need not be exhaustive, but boilerplate or blanket statements unacceptable).

The Commissioner cites evidence in the record to support the reasons given by the ALJ and would have the undersigned fill in the gaps of the ALJ's decision. The undersigned declines that invitation. Although the ALJ's treatment of Holmes' medical opinions may ultimately prove to be correct, it is the ALJ's responsibility in the first instance to identify the evidence supporting the reasons she offers.

Even were the undersigned inclined to fill in the gaps of the ALJ's decision, the undersigned is hesitant to do so. It does not appear that the ALJ adequately considered the supportability and consistency of Holmes' medical opinions.[3] Although the ALJ is certainly not required to use the

---

[3] In Morton v. Saul, No. 2:19-cv-92-RLW, 2021 WL 307552, 7 (E.D. Mo. Jan. 29, 2021), a district court observed that as to the "supportability" factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." As to the "consistency" factor, the court observed that "an opinion is more persuasive if it is more consistent with the overall evidence as whole." See Id.

words "supportability" and "consistency," there must be some indication that the ALJ considered the evidence relevant to those matters. Here, the ALJ made little mention of the relevant objective medical evidence and explanatory rationale to support her findings or explain why the other evidence is inconsistent with Holmes' opinions.

Given the foregoing, it is recommended that this case be remanded because the ALJ's findings are not supported by substantial evidence on the record as a whole. The remand should be pursuant to sentence four as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991). Upon remand, the ALJ should be directed to re-evaluate Holmes' medical opinions. If the ALJ is persuaded that the findings are not supported by, or consistent with, the record, the ALJ shall explain why.

DATED this 3rd day of October, 2023.

_____
UNITED STATES MAGISTRATE JUDGE